UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

```
L.C. ELDRIDGE SALES, ET AL    :      DOCKET NO. 6:11CV599
                              :
VS.                           :      TYLER, TEXAS
                              :      NOVEMBER 7, 2013
AZEN MANUFACTURING, ET AL     :      10:00 A.M.
```

FINAL PRETRIAL CONFERENCE
BEFORE THE HONORABLE MICHAEL H. SCHNEIDER,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

```
FOR THE PLAINTIFFS:          MR. ERIC HUGH FINDLAY
                             MR. WALTER WAYNE LACKEY, JR.
                             FINLAY CRAFT
                             6760 OLD JACKSONVILLE
                             SUITE 101
                             TYLER, TX  75703

                             MR. ERIC P. CHENOWETH
                             YETTER COLEMAN
                             909 FANNIN, SUITE 3600
                             HOUSTON, TX  77010


FOR THE DEFENDANTS:          MR. HARRY LEE GILLAM, JR.
                             GILLAM & SMITH
                             303 S. WASHINGTON
                             MARSHALL, TX  75670

                             MR. DAVID A. ALLGEYER
                             MR. CHRISTOPHER RYAN SULLIVAN
                             MS. CARRIE RYAN GALLIA
                             LINDQUIST & VENNUM
                             4200 IDS CENTER
                             80 S. EIGHTH STREET
                             MINNEAPOLIS, MN  55402
```

1  COURT REPORTER:          MS. JAN MASON
                            OFFICIAL REPORTER
2                           221 W. FERGUSON #100
                            TYLER, TEXAS  75702
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  PROCEEDINGS REPORTED BY MECHANICAL STENOGRAPHY, TRANSCRIPT

25  PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

1      THE COURT:  Good morning to everyone.

2      MR. FINDLAY:  Good morning, Your Honor.

3      MR. GILLAM:  Good morning, Your Honor.

4      MR. ALLGEYER:  Good morning, Your Honor.

5      MR. CHENOWETH:  Good morning, Your Honor.

6      THE COURT:  Boy, that was lively.  Appreciate that.

7  Gets my day going here.  Thank you.

8      We're here in Case Number 6:11CV599.  The case is

9  styled L.C. Eldridge Sales Company, et al versus Jurong

10  Shipyard, et al.  We are here on a final pretrial

11  conference.  The jury selection takes place next week.

12      Actually, we would be ready to pick the jury today if

13  our case -- since our case settled that was right before it,

14  but -- does anybody want to choose a jury today?  Okay.  All

15  right.  I assume by -- I assume by those people that are

16  lying on the floor that it answered the question.

17      Okay.  We'll keep that -- I believe it was on the 15th,

18  if I'm not mistaken, as the day that we'll be picking the

19  jury in the case.  But now we need to get ready for that and

20  make sure that we've done everything that we can do that

21  will make the trial go smoothly so the parties can focus on

22  the presentation of their case and impressing the jury with

23  that presentation, and so that things kind of go

24  automatically so they won't have to be spending their nights

25  wondering what the Court is going to rule on a particular

1   issue or some issue that they are not sure about.  So we're

2   going to try to do -- or we are going to resolve as many

3   things as possible here today.

4        So let's get started and let me make sure that I know

5   everybody that's here.  We'll begin with the -- with the

6   Plaintiffs in the case, if you'll make an announcement, and

7   then we'll move over to the Defendant.  And I would like for

8   everybody at the table to -- I would like to know who's at

9   the table, whether or not you're introduced by the person

10  who represents the parties or just if you want to say hello

11  yourself.  So with that bit of a wind-up, let's start off

12  with the Plaintiffs.

13              MR. FINDLAY:  Good morning, Your Honor.  Thank you.

14  Eric Findlay on behalf of the Plaintiffs, and also with me is

15  Eric Chenoweth from Yetter and Coleman down in Houston and

16  Walter Lackey, and we're ready to proceed, Your Honor.

17              MR. LACKEY:  Good morning, Your Honor.

18              THE COURT:  Good morning.  Nice to see everybody.

19  All right.  We'll move over to the Defendants, please.

20              MR. GILLAM:  Good morning, Your Honor.  Gil Gillam on

21  behalf of the Defendants.  Your Honor, with me today, from the

22  front of the table, is David Allgeyer.

23              MR. ALLGEYER:  Good morning, Your Honor.

24              THE COURT:  Good morning, sir.

25              MR. GILLAM:  Chris Sullivan and Carrie Gallia.

1          MS. GALLIA:  Good morning, Your Honor.

2          THE COURT:  All right.

3          MR. GILLAM:  We're ready to proceed, Your Honor.

4          THE COURT:  All right.  Thank you.  And nice to see

5   everybody on your side.

6      Okay.  Well, in getting started here, the first thing

7   that I would like to touch base with you on is I denied a

8   motion to dismiss regarding Atlantic -- pardon me, Atwood

9   Oceanic Global, LTD, GATL, however you wish to refer to

10  that.  What are your plans for filing an answer in the case?

11         MR. GILLAM:  Gil Gillam again, Your Honor.  We will

12  be filing an answer today on behalf of that Defendant.

13         THE COURT:  All right, sir.  What do you expect to --

14  the nature of it to be?  Is it going to be different than --

15  are you bringing any new issues to the table?

16         MR. GILLAM:  There will be nothing in that answer,

17  Your Honor -- correct me if I'm wrong -- that is any different

18  than any other answer that has been filed by any other

19  Defendant.  No new issues will be raised.

20         THE COURT:  Okay.  Well, I say that because there's

21  no need for us to go forward with this if we're going to have

22  something new in it.  I mean, we can just stop and I can wait

23  for you to file your answer.

24         MR. GILLAM:  No, there will be nothing new in there,

25  Your Honor.  We can proceed.

1    THE COURT:  All right.  I'm not being rude about it.

2    I mean, it just -- it wouldn't do us any good to have this

3    meeting here today if we didn't do that.

4        Make sure -- I see some people discussing it over

5    there.  Make sure that is your final position.

6            MR. GILLAM:  We're good with that, Your Honor.

7            THE COURT:  All right.  Thank you.

8        Well, I'll congratulate you on your progress.  I like

9    to see -- on working out a lot of the matters.  In an ideal

10   world, and not only in an ideal world, in my world most of

11   the times these things are already solved before we get

12   here, but I congratulate especially the local attorneys for

13   working hard to make sure that you have met a lot of my

14   expectations for you to be ready to go to trial.

15       So let me give you just a few rulings before we get

16   started here and maybe that will help us in -- in our

17   journey here.

18       Let's go to some of the summary judgments and let me

19   just tell you what -- from all your documents that you

20   filed, all the evidence you filed, I'm convinced that the

21   Outer Continental Shelf Lands Act applies in this case, not

22   only applies -- no one denies that it applies, but it also

23   extends the federal laws to the devices in this case, that

24   they are temporarily attached to the seabed under the law,

25   as per the law.  And I do find that to be a legal issue,

1　unless you can raise something that I haven't seen that

2　would make me believe it was a factual issue.  But from

3　everything I can see, that is a legal issue.

4　　　　The statute is pretty clear about the purpose -- one of

5　the main purposes was to make sure that they defined certain

6　limitations and duties and who was responsible under federal

7　law in developing the natural resources in that area.

8　　　　So, in fact, I find really that you all -- there is

9　really no dispute in your papers that the accused rigs

10　operate in that area.  The question, it looked like to me,

11　was the attachment, whether or not you were attached.  And

12　the Plaintiffs have established through the deposition

13　testimony of Grant Howard and Bobby Warren that the semi-

14　submersible drilling rigs were attached to the outer

15　Continental Shelf to develop natural resources.  Thus, the

16　Court would conclude that there is no fact issue remaining

17　in that area.

18　　　　Further, on the issue of the construction of the word

19　"housing", I notice that's raised not only here but in your

20　motions in limine and I'll try to give you a little help on

21　what my -- what direction I'm going on that.

22　　　　The Court -- I've considered that, and as I said in the

23　construction, "housing" means a case or enclosure.  It does

24　not mean anything that defines a mechanical -- there's not

25　any type of mechanical requirement or anything of a

1  mechanical nature that needs to be involved in that

2  enclosure.

3       I will not allow any expert testimony to give a

4  contrary definition, and that means that the Defendants'

5  expert cannot testify that a housing must enclose or encase

6  something that is mechanical, that that is a requirement.

7       Further, I find that the Plaintiffs' expert identified

8  the housing on the accused exhaust system.

9       As to Jurong's motion for summary judgment, I find

10 Jurong's corporate representative, when he testified that

11 Jurong knows where the rigs it builds will go after

12 completion and that Jurong stated in its -- has stated in

13 its publications, the Dolphin Magazine, that the accused

14 rigs would go to the Gulf of Mexico after completion.

15 Accordingly, I would deny the motion for summary judgment in

16 that regard.

17      As to the issue on anticipation and obviousness, the

18 Defendants have moved for summary judgment on the grounds

19 that the Copen reference was disclosed, discloses the

20 injection of ambient air into the exhaust system.  I find

21 that the arguments raised in the motion are -- after

22 reviewing those, I deny that motion for summary judgment.

23      As to the lack of a written description, the Court

24 finds that the Defendants did not timely raise this

25 invalidity theory, nor did they seek leave of the Court to

add this additional invalidity theory, so I'm going to deny

summary judgment and also will rule that the Defendants may

not argue that lack of a written description to the jury

issue before the jury because they've waived that argument.

On motions to exclude experts, Defendants' motion to

exclude Joseph Davis's opinion regarding the long-felt need

in the industry -- an expert obviously can rely on hearsay.

It's the type of evidence typically used by an expert in the

field, and I do find that customer and industry input rises

to the level of the type of information an expert in the

field would rely on.  The Defendants' challenge is more

appropriately directed to the weight of Davis's testimony.

Accordingly, the Court has -- the Defendants have not

demonstrated his opinion is unreliable and that motion is

denied.

Further, Defendants' motion to exclude the opinion of

Plaintiffs' expert witness on damages, there are several

pieces to that, several parts to it.  That would be Todd --

I'm going to go with Schoettelkotte. I'll do that as best as

a third descendent of German descent -- Schoettelkotte looks

about right to me.  I don't know whether my relatives would

agree with that pronunciation.

But the -- to just put it in sum, Defendants' motions

are denied.  Let me go into it.  Plaintiffs have

demonstrated their damages expert considered market

conditions, specifically the role of supply and demand.  For
example, Mr. Schoettelkoette or Mr. Schoettelkoette
considered the following facts:  That there were two
suppliers, Plaintiff and Azen, which offered the accused
products.  Second, the Plaintiffs have had continued success
selling their products at the higher price.  Third, the
accused products were considered a necessary element of the
rigs.  And fourth, there was not a non-infringing
alternative.

Accordingly, Mr. Schoettelkoette's opinions are found
in valid -- founded in valid economic principles, and thus,
they are admissible.  Defendants' concerns go to the weight
and not the admissibility of the evidence.

Now, as to the challenge to Mr. Schoettelkoette's
damages calculations as improperly based on the entire
market value of the Plaintiff's engine exhaust system, which
of course includes the patented ENJET component, the
Plaintiffs' damage calculation is based on the value of
the -- on the value of the engine exhaust system.  The
expert explains that the patented invention is the driving
force of the system.  The remaining parts, such as the fans,
electrical wirings and so forth, are merely the vehicle to
bring to life the patented invention and would not
independently be considered saleable units.

Accordingly, Mr. Schoettelkoette's opinion does not

1 violate the entire market value rule and would be

2 admissible, at least when it comes to that objection.

3     The Plaintiffs' motion to strike a late filed motion in

4 limine.  Plaintiff filed a motion in limine.  The Court's

5 Scheduling Order placed a deadline to file on October 11,

6 2013, and so I'm going to strike that motion in limine as

7 untimely.

8     The parties are reminded not to file any further

9 motions without first obtaining leave of the Court.

10     Now, going on to some other matters on the Plaintiffs'

11 motions in limine, I understand that you've had some -- I've

12 got some rulings on those.  If you've reached agreement on

13 them, I don't want to disturb those, and I'm not sure to

14 what extent you need a ruling in order to assist you in

15 reaching agreement on your final -- on the remaining

16 documents.

17     I can rule, for instance, on one motion here that --

18 regarding the inventorship of the '828 patent about the part

19 Gary Leseman played, the Plaintiffs move to exclude that

20 argument.  I'm going to grant that.

21     And then the other is regarding interpretation of the

22 claim terms that contradict the Court's construction order,

23 I'm going to go ahead -- and you may have reached some

24 agreements on it, but I need to make sure that we're clear

25 on this.  About the housing, I ruled on the housing.  I

1  mentioned where the Defendants' motion for summary judgment

2  argued that none of their products have housing and relied

3  on certain arguments, the Defendants are to be precluded

4  from arguing any other definition than what was specifically

5  said.

6        Defendants argue that they're not arguing a different

7  definition, just a different context.  Well, I've already

8  told you what my feeling about the housing is.  It does not

9  require any type of mechanical device, and frankly, in my

10 opinion, the housing -- the invention only requires or is

11 consistent with what the Plaintiffs' argument is on that.

12       Now, the other issue --

13            MR. ALLGEYER:  Excuse me, Your Honor.  I'm not sure

14 if I'm allowed to interrupt.

15            THE COURT:  No, you're not really.

16            MR. ALLGEYER:  I'm sorry, Your Honor.

17            THE COURT:  But what is it you want to say?  We're

18 not going any other place with the housing is what I'm saying.

19            MR. GILLAM:  That's what it's about.

20            THE COURT:  We're just not going any other place with

21 it.  I mean, you've inserted a requirement or a limitation that

22 they have to have something mechanical inserted or it's this as

23 it existed on the -- I have to go back and look at the names of

24 the parties.  Was it the ENJET unit did not have a housing?

25            MR. ALLGEYER:  Azen, Your Honor.

1    THE COURT:  Was that it?  Well, I would tell you that

2  it does.  I mean, that would be my -- that would be my opinion

3  on it, and we'll -- we'll talk about whether or not there's a

4  fact issue, whether or not you can possibly come up with a fact

5  issue on that.  In my opinion, I don't think you can, and

6  that's one reason why I'm giving you the benefit of these

7  rulings here is to tell you -- frankly, if you want me to just

8  sum it up, I don't -- I mean, I think they're pretty doggone

9  close to summary judgment on infringement.  And when you couple

10  that with the idea that -- of what you're relying on for prior

11  art, you know, you're not -- a lot of that was disclosed late

12  and I'm not going to permit that.

13    I don't mean to sound rude to you.  These are just my

14  rulings on it.

15    So, anyway, if you want to sit down and talk about what

16  else is left to be admitted, we can do that.  I'll take a

17  break now and then you can talk about it and maybe come up

18  with some questions you would like to ask, okay?

19    MR. ALLGEYER:  Thank you, Your Honor.

20    THE COURT:  All right.  Thank you.

21    (Court steps down from the bench.

22    THE COURT:  I guess what I'm recommending is, I would

23  highly recommend that you settle the case.  I'm not just making

24  those rulings and picking on people.  I'm just saying I don't

25  see much to go forward on, but that's just me.

1                     (Recess.

2         THE COURT:  All right.  I appreciate the progress

3 everybody has been making.  Let me get back and finish on the

4 motions in limine.

5         The Plaintiffs' motion in limine regarding the

6 Stempovski opinion letter, that was the opinion letter, and

7 I believe there was some question about whether or not

8 someone could introduce that into evidence.  I'm going to

9 grant the motion in limine.

10         Of course, you know, the motion in limine means that

11 basically that if you think -- it's not a final ruling.  You

12 just, when those items come up, you -- if you feel that it's

13 worth talking about at the time, we'll -- I'll see if you've

14 laid your predicate or if it has become admissible.

15         So there are ways I could see that that opinion letter

16 could become admissible, but as it stands now just on its

17 face, it's not.

18         The motion in limine regarding the re-examination of

19 the patents, unless I am missing something that makes it

20 totally inadmissible, I would say at least some -- some

21 mention of that can be made.

22         Can you work out any type of agreement about how much

23 you want to get in and so forth?

24         MR. FINDLAY:  Eric Findlay on behalf of the

25 Plaintiff, Your Honor.  We can certainly try to come to some

1  understanding on that.

2      THE COURT:  Well, I know you would try, but I mean,

3  basically you can't rely on somebody else's opinion that's not

4  your attorney, unless of course there is some kind of evidence

5  that I don't know that you've relied on.

6      So I'm going to go ahead and grant the motion in limine

7  and you can then work and see if it becomes admissible,

8  okay?

9      Then the Exhibit 228 would be the Momose patent.

10  Again, I'm sustaining the objection to that.  It was late

11  filed and so I'm not going to allow that.

12      What else?  Now, let me just make a clarification on a

13  ruling that I made.  What I said about the "housing" still

14  stands, that is that, as you know, the actual interpretation

15  or meaning given to "housing" was that it was a case or

16  enclosure, and there is no -- as I said earlier, there is no

17  specific requirement that it encase or enclose any specific

18  thing, including a mechanical device.  So there will not be

19  any argument that that is the case, that it has that

20  requirement.

21      However, there is at least a fact issue regarding

22  whether the wye duct itself satisfies the Court's definition

23  of "housing" and, for example, it could be that the

24  parties -- you might -- I could see a scenario where you

25  might present testimony that the wye duct in the -- is the

1   intersection of two pipes rather than a case or enclosure,

2   and there is some room for that argument.  But that does not

3   say that the housing requires a case or enclosure.

4       Does that make it clear?

5           MR. GILLAM:  Yes, Your Honor.  I -- well, yes, I

6   believe it does, Your Honor.  Mr. Allgeyer can talk about it.

7   I think that was our concern was that --

8           THE COURT:  I understand, and when I walked away I

9   thought about that a bit and it seemed -- and I went back and

10  read -- re-read or picked up the file again on that hearing,

11  and I think that -- I mean, there can be a fact issue on that.

12          MR. GILLAM:  I think our point, Your Honor, was

13  that -- I mean, our position is there's no housing and we have

14  to be able to tell the jury we don't believe there's a housing

15  because, and we could not say and would not say because this

16  does not -- this contains some mechanical device.  We would not

17  go there at all.

18          THE COURT:  Right.

19          MR. GILLAM:  I think our position would be it's not a

20  housing because of -- if the Court's definition is an

21  enclosure, it's not enclosing anything.  It's not a mechanical

22  device but it doesn't enclose anything.  So that would be our

23  argument.  Otherwise, there's no argument there, so --

24          THE COURT:  All right.  That's -- and that is the

25  correct understanding.

1           MR. GILLAM:  Thank you.  That's correct, Your Honor.

2           THE COURT:  All right.  I'm not going to ask you if

3     everybody is happy, but is everybody satisfied that you

4     understand what I mean?  Yes?

5           MR. FINDLAY:  The one issue, Your Honor, I think you

6     had asked about and I'm not sure if we gave you the answer.  I

7     think you had indicated that the re-exam, some portion of that

8     at least was fair to come in, fair game.  And I think you had

9     asked if we could agree on how much of that might come in or

10    not.

11        And I assume you're willing to talk about that.

12        I think we can try to talk about that and see if we can

13    come up with a solution that Your Honor would think is fair

14    and appropriate.

15          THE COURT:  All right, sir.

16          MR. ALLGEYER:  We're happy to talk about that.  I

17    guess I didn't -- maybe I got my notes wrong.  Was the motion

18    in limine on the re-exam granted or not?  I just --

19          THE COURT:  On what?

20          MR. ALLGEYER:  I'm sorry, Your Honor.  The motion on

21    the re-exam, did you grant the motion in limine on that or

22    deny?

23          THE COURT:  No, no, I did not.  I'm going to permit

24    it.

25          MR. ALLGEYER:  Oh, okay.

1    THE COURT:  I may have said that some way -- you

2  know, when you talk about a motion in limine, you kind of talk

3  in doubles.  I mean not you.

4    MR. ALLGEYER:  I absolutely know that, Your Honor.

5    THE COURT:  And, you know, it's kind of like -- well,

6  I don't need to say anything further.

7    MR. ALLGEYER:  It's probably my notes.

8    THE COURT:  For a judge, when you get up and you say

9  I grant the motion in limine, well, that means that you can't

10  bring something in until that time.

11    And while we're at that, I want to say about the

12  motions in limine, please be reminded that to -- these are

13  rulings as far as the way we conduct the trial and what

14  would be -- I mean, I'm not in any way saying anybody would

15  be guilty of contempt, but I'm saying if we did not -- if

16  you just got into these things, it would be, of course, a

17  violation of the Court's rulings.  You still have to have

18  your rulings on issues, unless we have something we reach on

19  the side and say you definitely -- this has been determined

20  so there's no question on it or it can't ever come in.

21    But anyway, does everybody have an understanding about

22  the motions in limine, the effect of it?

23    MR. ALLGEYER:  I think so, Your Honor.

24    THE COURT:  It's not a definitive ruling or an end

25  ruling on anything, okay?

1         MR. ALLGEYER: So it's possible, for example, our

2 opponents could put in evidence that opens the door to some of

3 this, if possible, and we would be able to refute that? But we

4 would want to take that up with Your Honor first before we --

5         THE COURT: Yes, that's a good example.

6         MR. ALLGEYER: All right. Thank you, Your Honor.

7         THE COURT: Thank you. Now tell me about the weather

8 where you're from this time of year. I'm joking with you.

9 We can talk about that in a minute.

10         MR. ALLGEYER: We did have some snow, Your Honor.

11 We're glad to be here.

12         THE COURT: Really?

13         MR. ALLGEYER: Yeah.

14         MR. GILLAM: One -- one issue, Your Honor. We

15 understand the Court has ruled out the Stempkovski letter. We

16 understand. The question is whether or not Stempkovski can

17 testify.

18         THE COURT: Well, whatever is left of his testimony,

19 yes.

20         MR. GILLAM: Thank you, Your Honor.

21         THE COURT: I'm not that familiar with what's left of

22 his testimony.

23         MR. GILLAM: I'm going to have to get familiar with

24 that too, Your Honor.

25         THE COURT: It was specific as to --

1    MR. GILLAM:  His opinion letter.

2    THE COURT:  That particular document, I think, wasn't

3  it, if I recall?  It's been a couple of days since I looked at

4  that.  That was his opinion.

5    MR. SULLIVAN:  Chris Sullivan.  There are two opinion

6  letters.  The Plaintiffs have also objected to him appearing at

7  all as a witness.

8    When you were discussing your ruling on the motion in

9  limine, you seemed to open -- leave open the issue of

10  whether or not foundation could be laid for introducing that

11  opinion.

12    THE COURT:  That's correct.

13    MR. SULLIVAN:  At some point through that.  So they

14  have -- they have an objection about him appearing as a

15  witness, and I guess we're just looking for clarity as to

16  whether or not we can bring him down to serve -- to do that,

17  lay that foundation.

18    THE COURT:  Well, whether or not you bring him as a

19  witness, I mean, you have to qualify him, meet all the other

20  qualifications, such as disclosure and things like that, and

21  list him as a witness.  If you've done that --

22    MR. SULLIVAN:  We have done that.

23    THE COURT:  I don't know.  We'll have to get to that

24  issue when it comes.  Give me an example of what you want so I

25  can understand and make it clear for you, if I can.

1    MR. SULLIVAN:  Well, as I say, the Plaintiffs have an

2  objection, a standing objection before the Court on whether or

3  not Mr. Stempkovski should appear as a witness.  He was listed

4  on the Defendants' witness list.

5    MR. FINDLAY:  May I be heard?

6    THE COURT:  Let me give you my reason for the ruling.

7  It was not his -- he was not shown to be the counsel of that --

8  is this the same one about his opinion?

9    MR. FINDLAY:  Correct.

10    THE COURT:  As a defense to willfulness or whatever

11  or intent?  Is that the one?

12    MR. FINDLAY:  That's correct, Your Honor.

13    THE COURT:  Yeah.  And the way it was presented to me

14  was that if that is presented as evidence to -- that they

15  relied on that opinion in order to disprove or to negate intent

16  or whatever, he's not -- he hasn't been shown to be their

17  attorney.  That was the grounds.  In other words, they stated

18  the grounds.  On those grounds, I sustain for those reasons

19  that they stated, okay?

20    MR. FINDLAY:  And my --

21    THE COURT:  What's your question?

22    MR. FINDLAY:  I was just going to clarify the

23  Plaintiffs' position.  I think you've stated it, which is

24  correct with our understanding, Your Honor.  The reason we had

25  asked for his letter to be stricken and also for him not to be

1  allowed to testify is because it was our understanding that the

2  only basis, the only thing he was going to testify about was

3  this purported opinion of counsel, which was given to none of

4  the Defendants here and which I think the Defendants agree with

5  us that all of their corporate representatives have admitted in

6  deposition testimony that they didn't rely upon.  That was why

7  we asked for him to be stricken.

8  　　　　THE COURT:  Well, it sounds like he has a tough time

9  getting it in then.  But I can't give you advice in total on

10  every case.  I just want to make it clear that I was ruling on

11  the precise -- precise grounds that you objected on or you

12  raised the question for a motion in limine.  I sustain your

13  motion in limine.

14  　　　　MR. GILLAM:  We understand, Your Honor.

15  　　　　THE COURT:  All right.  You do?  Would you call me up

16  this afternoon and tell me what I ruled?

17  　　　　MR. GILLAM:  We understand the basis of the Court's

18  ruling, and we can make a decision as to whether or not to

19  bring him and see if we can lay some predicate.  But given what

20  the Court says, we'll be able to deal with it.

21  　　　　THE COURT:  Let me say, for the benefit of the Fifth

22  Circuit, that I know both of these local attorneys at least and

23  I've had all the attorneys in before.  Sometimes the record

24  might come across as I'm treating these people like -- that I'm

25  being curt with them, and inviting you to call me to have ex

1    parte comments and things like that, those are jokes.  And it's

2    my poor attempt to lighten up what is a very difficult and hard

3    job, and so the only thing I require is that the attorneys

4    laugh at them when I -- that's the only thing I require.

5         All right.  With that bit of a note, we're through with

6    that.

7         Now, did you have some other matters that you now felt

8    like you wanted to -- do we have some logistical matters,

9    such as introduction of what you -- stating your agreement

10   on the record or what -- any other agreements or anything

11   like that that you need to do?  Or do I need to step down

12   after having made these rulings?

13            MR. GILLAM:  Your Honor -- somebody stop me if I'm

14   wrong.  I believe that based upon the Court's rulings, we

15   should be able to reach -- or we have an agreement and will be

16   able to present to the Court an exhibit list which has

17   everything on it that the Court is letting in and keeping out

18   everything that the Court has not permitted.  I think we can do

19   that.  I think we've reached the agreements.  We would like to

20   put it in writing and get it to the Court.

21            THE COURT:  All right.  Fair enough.  Is that your

22   agreement too?

23            MR. FINDLAY:  Yes, Your Honor, that's correct.

24            THE COURT:  All right.  Now, let me give you a few

25   housekeeping matters and we can -- let's talk about these

1   things.

2       Your exhibits, of course, we've sent out a note, our

3   typical order on having them numbered and so forth and in

4   the proper order.

5       I don't really need copies of -- don't work yourself to

6   death getting me a notebook.  What we'll do is I've got

7   these -- I have this screen here.  If I need to do

8   something, see something more specific, it won't take but a

9   few seconds, I'm sure, for you to take it out of your

10  notebook and hand it to me, all right?

11      And have we waived all our foundations for exhibits

12  that are admissible or that you're agreeing on?  Is that

13  correct?  Anything else?  I'm assuming once you file your

14  agreement, that they're admissible.

15          MR. GILLAM:  Right.  We have no foundational issues,

16  Your Honor, that I'm aware of.

17          MR. FINDLAY:  Right.

18          THE COURT:  All right.  Okay.  Now, let's talk about

19  your timing for trying the case.  We'll be picking the jury on

20  Wednesday.  It's too late for me --

21          COURTROOM DEPUTY:  Friday.

22          THE COURT:  Friday, the 15th.  It's too late for us

23  to mail out jury questionnaires and have them back in time.  I

24  would -- I regret it, if any of you were planning on doing

25  that, and it -- I will say this, if you have -- if you can come

1   up with a one page questionnaire that you agree upon, I can

2   give it to them.  And it will delay a little bit, but we'll

3   have the jury fill that out.

4       The problem, as you can imagine, when we do that, as

5   you all know, is collating them when we get them back over

6   here.  But we'll do that.  We'll work through that if you

7   can come through with one -- one page.

8       Do not ask them if they like or dislike the Judge.  Do

9   not put that question on there, all right?  What about --

10  you could ask them if they like lawyers, though.  Again, I'm

11  joking.  I jest, because we all know the answer to those,

12  don't we?

13      Well, anyway, so if you will work on that, an agreed

14  questionnaire, and if you'll have it in to us, you know,

15  maybe by Wednesday.  What day is Wednesday?  The 13th?  We

16  can take that and get it to the jury room and we'll take a

17  few extra minutes to get that filled out.  And, of course,

18  our problem is we don't have any money to copy the -- make

19  copies, so we have electronic -- if we can't do it

20  electronically, you can't do it anymore.  Okay.  But I think

21  we can spring for that.

22      Okay.  Now, let's talk about our times here.  Do you

23  need more than three hours to try your case?

24          MR. FINDLAY:  I think so, Your Honor, a little bit

25  more than that.

1    THE COURT: You do? All right. Give me your best

2 shot. I know you're going to ask for more than you're going to

3 get, but, anyway, what do you -- let me tell you what I

4 normally do on these things. I start out with ten hours and we

5 can work on this. Give me -- give me your best shot on what

6 you need.

7    MR. GILLAM: Your Honor, I think that we had

8 estimated 13 to 15. I'm not sure how that broke down. We

9 think we could do it in 13 per side.

10    THE COURT: 13 per side? All right. Done.

11    And I will not penalize or take away time from you if

12 you can reach stipulations that do -- on those things that

13 really aren't matters -- especially I encourage it on

14 matters where you -- if you have witnesses that you feel

15 like you want to -- you need their testimony but you don't

16 need -- the jury doesn't need to see them or you don't feel

17 like it hurts your case, if you want to stipulate to what

18 their testimony would be, not that you agree with it, but,

19 you know, those type stipulations, any type of stipulation

20 you can that can help us move along.

21    Now, about your depositions, your video depositions,

22 how are we looking on those as far as time goes and how

23 much -- how much work do we need to do on those?

24    MR. FINDLAY: I think we might have to defer to our

25 co-counsel here, Your Honor.

1    MR. CHENOWETH:  Your Honor, Eric Chenoweth on behalf

2  of the Plaintiffs.

3    There are likely two or three witnesses we would call

4  by deposition.  Our designated clips I think for those

5  witnesses are only about 30 minutes each.  I think the

6  Defendants' corresponding clips for those witnesses are

7  comparable time-wise.  So maybe we will call two or three

8  witnesses for a total of two to three hours of deposition

9  testimony.

10    THE COURT:  All right, sir.

11    MR. GILLAM:  Your Honor, our best estimate is that

12  it's about the same for us, probably two to three hours.

13  Correct?

14    MR. SULLIVAN:  Actually, ours may be a little longer.

15    MR. GILLAM:  Ours may be a little longer than theirs

16  as far as the clips, but we're looking at, if I'm correct,

17  total, if they have two to three hours and we have three or so

18  hours, then we may have a large -- bottom line is a lot of this

19  case I think will be by deposition, by video deposition,

20  because a lot of these folks were taken a long way away.  But

21  we will -- obviously understanding that our time comes out of

22  the 13 hours obviously.

23    THE COURT:  Okay.  What I'm trying to get a handle on

24  is any of these depositions that last for a long period of time

25  and there's a particular segment in their interval.  What's the

1  maximum you think you have on one?

2      Now, let me just back up here.  I expect you to go

3  through and have your people edit those things so that we

4  don't have people waiting to show documents around and so

5  forth.  And I know that you always do -- both of these

6  attorneys always seem to represent clients that have got

7  them pretty well edited.  But I do that actually in my

8  attempt to help you with your presentation on these cases.

9  As you all know, the juries just have a tough time with

10  these cases.

11      MR. GILLAM:  Your Honor, we are working together.

12  The parties are working together to have a very well-edited

13  deposition on each witness, and so it will be ready to go with

14  respect to each one of them at the time.  I mean, we're working

15  together on that, Your Honor.

16      THE COURT:  All right, sir.  Now -- thank you.  I

17  appreciate that.

18      That goes to another subject here.  As far as your

19  opening for each witness, I encourage, not only allow but

20  encourage you to take 30 to 45 seconds when you have a

21  witness, especially if you want to place the context they're

22  in, to make a statement about what the purpose is for this

23  person's testimony.  And I don't limit -- I don't charge you

24  with -- I mean, that doesn't come out of your time for

25  opening statements.  It does, however, come -- it's total

1    time that you use here, but that shouldn't be much.  So feel

2    free to do that.

3         Let's see, what else do we have on our list here?  All

4    right.  As far as choosing the jury, since we will have jury

5    questionnaires, it really shouldn't take that long and I'll

6    ask you -- I'll have a seven person jury.  It shouldn't take

7    long to pick the jury.

8         And I'll tell you this in advance, too.  If you in

9    advance agree to -- you've got three strikes.  If you agree

10   to pick to the end of the panel, in other words, you get

11   more strikes if you can agree to do that, all right?  We'll

12   bring in 20 --

13             COURTROOM DEPUTY:  One.

14             THE COURT:  21, so that leaves you some there if you

15   reach an agreement.  But you need to do it before we actually

16   start the examination itself, okay, so that we're prepared to

17   do that so that we know to go to the end of the panel when

18   we're talking to them, okay?

19             MR. GILLAM:  Understood.

20             MR. FINDLAY:  Understood.

21             THE COURT:  Now, for opening and -- or for voir dire,

22   on those we usually go, what is it, three minutes?  Oh, 20

23   minutes.  I make a statement.

24        And, by the way, anybody object to them watching the

25   Judicial Council's film on patent cases?

1          MR. GILLAM:  No, Your Honor.

2          MR. FINDLAY:  No objection.

3          THE COURT:  So my main thing is to just kind of tell

4   them a little bit about it and set them at ease about being

5   here and basically to get them ready for -- as best I can, to

6   explain to them why a patent case might be a little bit

7   different and the rules of the game about what they can and

8   can't do.

9       What I'm saying is I give a pretty good period of time

10  so that you can concentrate on asking specific questions to

11  people, and I've found 20 minutes to be fine.  You let me

12  know.  Can you live with that?

13         MR. GILLAM:  Your Honor, I think so.  The question I

14  would have, in picking a jury before you before, the Court in

15  the last jury I was involved with the Court on, you asked some

16  questions yourself.  We have the questionnaire and then you

17  asked some questions yourself of the panel.  Are you going to

18  do that again?

19         THE COURT:  I can do that, yeah.

20         MR. GILLAM:  Well, it doesn't --

21         THE COURT:  Whatever makes it easier.  It's easier

22  sometimes for us as far as going through the logistics of those

23  things.  What would you like for me to do?

24         MR. GILLAM:  Well, the parties jointly -- well, I

25  don't know about jointly.  The parties did submit some

1  questions for you to ask.

2         THE COURT:  All right.

3         MR. GILLAM:  Which is fine with us.  Now, if we're

4  going to add a questionnaire to that, we'll look at the

5  questionnaire in light of the questions that we submitted to

6  the Court already and make sure there's no overlap there to the

7  extent we can.  But assuming that we have the questionnaires,

8  assuming the Court asks some questions, 20 minutes a side, we

9  think we can probably live with that.

10        THE COURT:  All right.  So to be clear on this, we

11 will go ahead and have the questionnaire.  You do want the

12 additional questionnaire, or do you want me to submit the

13 questions?

14        MR. GILLAM:  We will submit an agreed questionnaire

15 by Wednesday.

16        THE COURT:  Okay.  Good enough.  You've got 20

17 minutes, okay?

18        MR. FINDLAY:  Thank you.

19        THE COURT:  It's going to take you ten minutes to

20 offset what I say though, right?

21    All right.  What other things?  Your opening and

22 closing, I have no objection, as long as the parties agree

23 to this in advance, on your opening statements to in effect

24 kind of argue what your position is, if the parties agree to

25 that.  I will assume that you do agree unless I hear

1  otherwise, okay, that you have -- that you may -- you don't

2  have to give a totally objective position.

3          MR. GILLAM:  Understood.

4          THE COURT:  Of what it is, but if one party

5  disagrees, that's good enough for me.  We'll just go back to

6  the regular rules, okay?

7          MR. GILLAM:  The Court is talking about the actual

8  opening statements themselves, correct?

9          THE COURT:  Right.

10          MR. GILLAM:  Is it permissible, Your Honor -- I think

11  we've done this before.

12          THE COURT:  You cannot sit in the jury box with them,

13  no, sir.

14          MR. GILLAM:  Got it.  In the voir dire itself, we can

15  give not an opening statement obviously, but we can give them a

16  little bit of context to what we're going to be asking

17  questions about in the context of the case?

18          THE COURT:  You can use your 20 minutes any way you

19  want to use it.

20          MR. GILLAM:  Thank you.

21          MR. FINDLAY:  Thank you, Your Honor.

22          THE COURT:  I have no -- that's your time that you

23  use.  Now, there are limitations, of course, but you know what

24  I'm saying.  You may go into those things.

25          MR. GILLAM:  Your Honor, will we -- we'll pick the

1  jury on Friday.  Will we do the opening statements on Monday?

2       THE COURT:  I think we can -- that's a good question.

3  We've got commitments all that next week.  I -- I would like

4  for you to make your opening statements on Monday -- I mean on

5  Friday and we can just go from there, okay?

6       MR. GILLAM:  If the -- assume we get the jury picked

7  that morning, we can do -- well, the question would be if we

8  get the opening statements out of the way Friday, will we begin

9  the actual evidence on Friday as well or wait on that until

10  Monday?

11       THE COURT:  No, not unless everybody agrees.  We're

12  prepared to do it.  If you agree to start on Friday, we'll do

13  it.

14       MR. FINDLAY:  I -- we'll talk about it, Your Honor,

15  but I think --

16       THE COURT:  That's no.

17       MR. FINDLAY:  Based upon the preparations that we've

18  already taken and communication with witnesses, I think we

19  would prefer, if it's all right with Your Honor, to start the

20  actual evidence on Monday.

21       THE COURT:  No, that's the way I prefer it actually.

22  It makes it easier for us, because we usually have a few loose

23  ends, things that we didn't cover today that we need to talk

24  about.

25      Okay.  The Court -- it depends on how you're going.

1  We're going to start out on -- this will be the start of it

2  anyway.  We'll start out -- is it 7:30 or what is it?  8:30,

3  8:00 for starting our trials here?

4          COURTROOM DEPUTY:  We can start at 8:30.

5          THE COURT:  All right.  We'll start out at 8:30 and

6  end at 5:30.  Generally we have an hour and 15 minute sessions,

7  which means that we'll break for 15 minutes after an hour and

8  15 minutes, and for lunch we have an hour and 15 minutes.

9      Your opening and closing statements, 20 minutes.  Any

10  problems with that?  Need more?

11          MR. GILLAM:  We would like to have at least 30 on

12  that, if we could, Your Honor, per side.

13          THE COURT:  For opening?

14          MR. FINDLAY:  Yes, Your Honor, we would join with

15  that request for 30 minutes.

16          THE COURT:  All right.  How about closing?

17          MR. GILLAM:  We're not sure about that yet, Your

18  Honor.

19          THE COURT:  All right.  I'm going to go ahead --

20  here's the thing.  We need to be ready to jump right on into

21  closing argument as soon as we read the jury charge.  I mean,

22  get the jury charge and go, so there won't be much break --

23  there won't be really any break at all, because we'll be

24  working on the jury charge all during the trial.

25      That doesn't mean that we don't have input as to what

1  goes in the jury charge.  What I'm saying is we don't wait

2  until the end of the evidence to do all our work.  We'll

3  work as we go, so that I expect to go right into it and we

4  generally go 20 minutes.  I'll give you 25 on it to -- for

5  your closing arguments.

6       What else?

7            MR. FINDLAY:  Your Honor, we did have one other

8  question, if we might.

9            THE COURT:  All right, sir.

10            MR. FINDLAY:  Would it be possible -- and I'm not

11  familiar or I don't recall the Court's procedure on this.

12  Would it be possible for us to get the list of potential jurors

13  before Friday, or is it Your Honor's practice to give them to

14  us that Friday morning?

15            THE COURT:  Ms. Pritchard, is that possible?

16            COURTROOM DEPUTY:  We give them Friday morning.

17            MR. FINDLAY:  Friday morning.  Okay.  Thank you.

18            THE COURT:  All right.  Anything else?

19            MR. FINDLAY:  Not from the Plaintiff, Your Honor.

20  Thank you very much.

21            THE COURT:  Okay.  Thank you.  We'll go ahead and be

22  here at -- usually my orders say that the actual selection,

23  jury selection starts at ten a.m., but we'll need to be here

24  earlier for us to have some discussions about what might have

25  come up between this time and that time.  What time?  About

1    nine o'clock?  Nine o'clock would be fine.

2            MR. GILLAM:  That's fine with us.  Could I have one

3    moment, Your Honor?

4            THE COURT:  Yes, sir.

5        One thing I'll also tell you about is that we have a

6    seating chart for the parties, so you'll be able to -- and

7    I'll go over this with you when you get here earlier, but

8    basically we'll have jurors on both sides of the aisles out

9    here and they'll be numbered and with their names, and it

10   will have some basic information too that will be

11   repetitious but it will be about the town in which they

12   receive their mail, things like their employment, their --

13   if they have a spouse, their spouse's employment, just very

14   basic information that will be a supplement or be in

15   addition to whatever else you have.

16       Now, it goes without saying that one thing that I

17   insist on is that we be on time and that we -- we don't

18   overlap our breaks and we do not have any unnecessary

19   conferences at the bench.  Those we can take care of either

20   early in the morning, in the afternoon or at lunch.  But I

21   want to avoid interrupting.  However, there are cases.  You

22   can't guarantee it won't happen, but we try to avoid those

23   things.

24       There was one other thing too I wanted to say in that

25   regard, but I can't -- it doesn't come to mind right this

1    minute.

2         MR. GILLAM:  Your Honor, the last case that we had, I

3    think it was the Court's preference that if there was a

4    conference at the bench there would just be one attorney per

5    side.  I don't know if the Court follows that practice here.

6    We did that in Marshall.

7         THE COURT:  Yeah, that's my preference.  You know,

8    there may not be so many of us here that we can't do that, but

9    let's go ahead and try that.  Let's start out with one and then

10   we'll go from there.  If it's necessary to bring a compadre

11   along to better explain something, I'm sure that's fine, okay?

12   In other words, we don't need everybody up there.  Just the

13   people that are necessary, okay?  Good point.

14       Okay.  Anything else?

15        MR. FINDLAY:  Not from the Plaintiff, Your Honor.

16   Thank you.

17        MR. GILLAM:  No, Your Honor.

18        THE COURT:  Okay.  Well, thank you and good luck on

19   your case.  I would say this, I would like to talk to the

20   parties briefly, just an informal discussion back in my

21   offices.  Why don't you give me five minutes or so.  I have to

22   try to find my way back there.  Anyway, no, just -- I would

23   like to talk with you about a matter.

24       Anything else?

25        MR. GILLAM:  No, Your Honor.

1          MR. FINDLAY:  No, Your Honor.

2          THE COURT:  Okay.  Well, we'll look forward to seeing

3   you at that time then.  Thank you for your preparation.

4          MR. GILLAM:  Thank you.

5          MR. ALLGEYER:  Thank you, Your Honor.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   I certify that the foregoing is a correct transcript from

22   the record of proceedings in the above-entitled matter.

23

24   _____          _____

     Jan Mason                            Date

25