IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| L.C. ELDRIDGE SALES CO., LTD., LESEMAN DAVIS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>JURONG SHIPYARD PTE, LTD., ATWOOD DRILLING, INC., ATWOOD OCEANICS MANAGEMENT, LP, ATWOOD OCEANICS GLOBAL LIMITED, SEADRILL AMERICAS, INC., SEADRILL US GULF LLC,<br><br>Defendants. | Civil Action No. 6:11-cv-599<br>(Jury Demanded)<br><br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR RENEWED POST-TRIAL MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL OR REMITTITUR** |

The Plaintiffs take the simple fact that the jury found in their favor as proof that the verdict is supported by substantial evidence. This is not the standard—the jury's verdict doesn't simply speak for itself. Instead, the Court must ensure that every element of the verdict is supported by substantial evidence. *See Am. Home Assurance Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004). Because that is not the case here, the Court should instead award the Defendants judgment as a matter of law.

## ARGUMENT

Despite the Plaintiffs' mischaracterization of the evidence provided to the jury and of the Defendants' positions, the Defendants respectfully ask the Court to grant them judgment as a matter of law (or in the alternative a new trial) because (1) the asserted claims of the '828 Patent are not infringed; (2) the asserted claims are invalid; (3) all claims against Jurong should be dismissed; (4) there has been no willful infringement; and (5) lost profits are not available.

**I.      The jury's infringement finding lacks substantial evidence.**

The Plaintiffs argue that the jury, in finding infringement, was free to disregard the testimony of the Defendants' technical expert. To reach its conclusion, however, the jury also had to have disregarded the testimony of the Plaintiffs themselves. This it could not do.

Specifically, as the Plaintiffs recognize, Dr. Beaman testified that, in light of the Court's construction of the term "housing" as a "case or enclosure," the accused Azen systems, which use a wye duct, lack a housing and therefore they "do[] not infringe Claim 1 of the '828 Patent." (Doc. No. 317 at 66:3–5; Doc. No. 318 at 7:9–17.) Joe Davis agreed with Dr. Beaman that the pipes in the accused Azen system were configured with a wye duct or connection. (Doc. No. 314 at 14:7–12.) And while he testified that, in his opinion, the wye duct of the accused systems is a housing (Doc. No. 313 at 86:14–19), he also testified that the very same pipe configuration in another device (the Copen reference) was not a housing. (Doc. No. 314 at 21:6–8).[1] Therefore, the jury could only credit Mr. Davis's testimony over that of Dr. Beaman if it chose at the same time to disregard the clear testimony of Mr. Davis that a wye duct is *not* a housing. *Cf. Schlesinger v. Herzog*, 2 F.3d 135, 139 (5th Cir. 1993) (holding that it can be error to credit the testimony of one witness over another where the finding is "internally inconsistent").

Mr. Davis attempted to explain this inconsistency by offering the non sequitur that the Copen invention, despite its use of a wye duct, lacks a housing because "[t]his is on a car." (Doc. No. 314 at 21:10–12.) While the Plaintiffs complain that Dr. Beaman offered "no basis other than his say-so" for the fact that, in mechanical engineering, a car or an airplane is

---

[1] The Plaintiffs suggest that Mr. Davis identified a housing in the Copen reference during his testimony. (Doc. No. 333 at 10.) However, immediately after stating that "the arrangement would be" a housing, Mr. Davis stated, "I'm not sure I understand what you're asking." (Doc. No. 314 at 21:2–5.) Therefore, Mr. Davis never clearly identified a housing in Copen and in fact expressly testified to the contrary. (*Id.* at 21:6–8 ("Q. I'm asking if there is a housing in Copen anywhere where these two exhaust pipes come together. A. As we defined it, I don't see it.").)

2

considered a structure, Mr. Davis did the same, asserting conclusorily that a car is not a structure. (*Id.* at 22:15–16.) But the Plaintiffs gave up during prosecution any requirement that the structure of the claimed invention be stationary, and Dr. Beaman offered unrebutted testimony that the laws of mass, momentum, and energy apply regardless of whether a structure is moving or stationary. (Defs.' Trial Ex. 76 at 281; Doc. No. 318 at 12:14–22.) And Mr. Davis's testimony mischaracterizes Copen, which in fact claims an "exhaust system" that can be used on a stationary structure: a car at idle. (Defs.' Tr. Ex. 80 at [54], col.2 l.20–22 ("A fan may also be provided for forcing air through the venturi when the vehicle is not being moved . . . .").

Finally, the Plaintiffs' argument that the Defendants are attempting to assert a new claim construction position is misplaced. The Defendants contend only that they are entitled to a new trial because Dr. Beaman was erroneously barred from testifying that the accused systems lack a housing[2] when the Court gave a limiting instruction; the Plaintiffs used this limiting instruction in their closing argument to prejudicially imply that Dr. Beaman had not testified in line with the Court's construction of the term "housing"—while, in fact, he had, as the Plaintiffs now admit. (Doc. No. 333 at 111.) To characterize this as a situation where the Defendants failed to offer a new claim construction position only after the jury returned its verdict barred by *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 694 (Fed. Cir. 2008), is erroneous and a distraction.

Because the Plaintiffs' evidence was internally inconsistent, it was unreasonable for the jury to credit it over the testimony of Dr. Beaman. Moreover, no infringing activity in this case

---

[2] In their motion, the Defendants mentioned that they plan, if necessary, to appeal the Court's claim construction order. (Doc. No. 326 at 6 n.1.) Far from an assertion of a "new" claim construction position, the Defendants have the right to appeal the Court's claim constructions, and the Court has the right to change those constructions.

occurred within the reach of U.S. patent law. (*See* Doc. No. 326.) Therefore, the Defendants are entitled to judgment as matter of law that they do not infringe the asserted claims.

## II. The jury's verdict on patent validity lacks substantial evidence.

The Plaintiffs accuse the Defendants of relying on a "practicing the prior art" defense. This accusation is groundless. Instead, the Defendants have consistently asserted that, as discussed above, the accused Azen exhaust systems do not infringe the asserted claims of the '828 Patent because they lack a housing; if, however, the wye duct of the accused systems is found to be a housing, then the asserted claims of the '828 Patent are invalid because the use of a wye duct as a housing, or a case or enclosure, is disclosed (along with the other elements of the claims) in the prior art. The Plaintiffs have painted themselves into a corner by asserting inconsistent positions. When it serves their infringement position, the Plaintiffs argue that a wye duct is a housing; when it serves their invalidity defense, however, the Plaintiffs argue that a wye duct is *not* a housing. Therefore the jury's verdict—in reliance on these inconsistent positions— cannot stand. The Federal Circuit's holding in *Tate Access Floors, Inc. v. Interface Architectural Resources*, 279 F.3d 1357, 1366 (Fed. Cir. 2002), does not mandate a different response. The Defendants did not ask the jury to compare the accused Azen systems to the prior art. Instead, the Defendants have done nothing more than assert a consistent understanding of housing—the Court's construction of the term—in the contexts of *both* the validity and the invalidity inquiries.

The Plaintiffs again argue that Dr. Beaman's testimony regarding relative velocities in the Copen reference must be disregarded because he "relied upon . . . not-to-scale drawings."[3] (Doc. No. 333 at 18.) Dr. Beaman did no such thing. While Dr. Beaman testified that the Copen

---

[3] The Plaintiffs also argue that Dr. Beaman failed to establish that Copen concerns a structure. Dr. Beaman instead testified that Copen claims "an exhaust system" that need not be on a car and that can be used on a structure that is not moving. (Doc. No. 318 at 21:4-23.)

4

drawings do not state that they are to scale (Doc. No. 318 at 85:22), he never used the drawings to determine, as the Plaintiffs complain, "the areas of the various pipes shown" (Doc. No. 333 at 18). The only area Dr. Beaman referenced is that of the exhaust pipe, which he testified "has basically a common area as you go across it." (Doc No. 318 at 19:14-15.) He determined that it was "an exhaust pipe or tailpipe" by reviewing the patent's specification. (*Id.* at 19:19-23.) In opining that the velocity of "the combined gasses will in fact be greater than the exhaust velocity," Dr. Beaman did not compare the area of the exhaust pipe, as depicted or otherwise described, to the area of any other pipe. Instead, as Dr. Beaman explained, the Copen patent uses a venturi effect (Defs.' Trial Ex. 80 at [54]), which necessarily creates an increase in the velocity of the combined gases,[4] thus meeting this limitation of the asserted claims. (Doc. No. 318 at 85:1-7 ("That's more or less what venturis do and I was just describing the equation to make it happen . . . .").) The calculations served to underline Copen's teaching of this basic use of fluid dynamics to accelerate exhaust. (*Id.* at 20:2-11.) The Plaintiffs offered no testimony in rebuttal. While the jury may be entitled to disregard opinion testimony, it is not permitted to disregard mathematical equations and fundamental principles of physics that are beyond dispute.

With respect to obviousness, the Plaintiffs argue that Dr. Beaman failed to offer any testimony regarding the relative velocities in the combination of the Nakagami and Koelm references. In so arguing, they ignore that, as Dr. Beaman testified, they agreed with the patent examiner during prosecution and admitted that the Nakagami reference itself discloses a greater combined velocity. (Doc. No. 318 at 27:17-28:1.) Given this admission and Dr. Beaman's testimony that one of ordinary skill would be motivated to combine Nakagami with Koelm, the

---

[4] In physics, a venturi, by definition, increases the velocity of flow of a fluid. *See* Venturi – definition, http://www.merriam-webster.com/dictionary/venturi (last visited Jan 21, 2014).

jury heard unrebutted testimony that the asserted claims of the '828 Patent are obvious—and the Plaintiffs' self-serving testimony on secondary considerations cannot trump this. *See W. Union Co. v. MoneyGram Payment Sys.*, 626 F.3d 1361, 1373 (Fed. Cir. 2010) ("[W]eak secondary considerations generally do not overcome a strong prima facie case of obviousness.").

The Plaintiffs also argue that the Defendants waived any argument based on the written description requirement because they did not ask for a jury instruction on this issue. To the contrary, the Defendants proposed a written description instruction to the Court. (Doc. No. 255.) Moreover, the Defendants sought timely summary judgment on this issue soon after the Plaintiffs revised their infringement contentions to finally identify a housing in the accused engine exhaust systems through Mr. Davis's June 12, 2013, supplemental expert report. (Doc. No. 218.)

Therefore, given the Defendants' unrebutted testimony on invalidity, the jury's verdict lacks substantial evidence and the Defendants are entitled to judgment as a matter of law, or in the alternative a new trial to remedy the improper exclusion of relevant, invalidating prior art.

## III. All claims against Jurong should be dismissed.

The law is clear—and clearly stated in the Plaintiffs' cited cases—that "inducement of infringement does not reach actions taken before the patent is issued." *Black & Decker (U.S.), Inc. v. Home Prod. Mkg., Inc.*, 929 F. Supp. 1114, 1121 (N.D. Ill. 1996) (citing *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996)). The conduct the Plaintiffs identify as establishing that Jurong had the required specific intent occurred *before* the patent issued: the issuance of a specification for an engine exhaust system and Jurong's seeking information from the Plaintiffs about their ENJET system. Because the '828 Patent had not yet issued, Jurong cannot as a matter of law have had intent to induce its infringement.

And neither does the other cited conduct support a finding of inducement. First, the Plaintiffs argue that Jurong induced infringement by simply delivering the *Atwood Condor* and

6

the *Seadrill West Capricorn* in Singapore after the patent issued. However, they cite no case that supports their argument—and the Defendants have found no such case—that mere delivery of an item can establish inducement. Even if delivery is sufficient, the Plaintiffs have not carried their burden of proving infringement. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 n.4 (Fed. Cir. 2005). The only cited evidence that shows when the two rigs were delivered in no way establishes that Jurong had any intent to infringe a patent related to the engine exhaust system installed on the rigs and also clearly demonstrates that the rigs were delivered in Singapore to non-parties to this case. (Pls.' Trial Exs. 39, 301.) In any event, delivery can only support a finding of infringement if the Defendants knew that delivery would induce direct infringement of the '828 Patent, *see Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068 (2011), but the evidence is clear that Jurong, which sought assurances of noninfringement from Azen, did *not* intend to cause infringement.

The Plaintiffs' other arguments are also unavailing. There is no basis for their assertion that indemnification is an act of inducement. In *Hewlett Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1470 (Fed. Cir. 1990) (emphasis added), the Federal Circuit held that "an indemnification agreement will generally *not* establish an intent to induce infringement," unless the "primary purpose" of the indemnification is "to overcome the deterrent effect that the patent laws have on would-be infringers." Here, there is absolutely no evidence that the primary purpose of Jurong's indemnification was to encourage patent infringement. Instead, the jury heard unrebutted testimony that such agreements are standard in the industry. (Doc. No. 314 at 108:10-110:6 (Baker Test.); Doc. No. 317 at 41:6-44:8 (Cole Test.).)

Finally, that Jurong did not ask Azen to change its design cannot be seen as intent to induce the Atwood and Seadrill defendants to infringe the asserted claims of the '828 Patent.

7

Jurong specifically asked Azen to avoid infringing any patent rights in its design and sought assurance from Azen that it would not infringe—all before the patent had even issued. (Doc. No. 312 at 110:18-111:8 (Lee Test.).) Moreover, there is no basis for suggesting that Jurong had an obligation at any time to alter what it in good faith thought to be a non-infringing exhaust system sold and installed on the *Seadrill West Sirius* years before the patent even issued (and before, as stated above, any infringement, induced or otherwise, can take place as a matter of law). The only case the Plaintiffs cite to support this suggestion concerns, among other evidence of intent, the failure of the accused infringer to retrieve its own sales samples—not to alter or interfere with systems it had already sold outright. *See Black & Decker*, 929 F. Supp. at 1121.

Therefore, because the record is bereft of evidence that Jurong had any intent to induce infringement of the '828 Patent, the Court should dismiss all claims against Jurong.

## IV. None of the Defendants acted willfully.

The Defendants have shown, in this motion and in their opposition to the Plaintiffs' motion for enhanced damages (Doc. No. 324),that the Plaintiffs did not establish with clear and convincing evidence that any of the Defendants acted willfully because the Defendants had reasonable, credible defenses. Still, the Plaintiffs argue that Jurong "copied" the Plaintiffs' ENJET device. However, the ENJET, and all embodiments of the claimed invention, employs an annular region created as the housing surrounds the exhaust pipe. There is no annulus in the accused systems, which instead use a wye duct. The Plaintiffs' persistent but completely groundless claim of "copying" dramatizes the lack of substantial evidence in the record of willful infringement, let alone clear and convincing evidence.

The Plaintiffs also argue that the Atwood and Seadrill entities engaged in a corporate "shell game" to evade liability for patent infringement, and that this establishes willfulness. Not only does this argument lack a basis in law, but it also stretches the facts beyond credulity. No

8

testimony was offered that any entities were created for any reason related to this lawsuit. Instead, the jury heard that these companies exist "to take advantage of tax benefits" and that the use of international divisions is "[v]ery standard."[5] (Doc. No. 314 at 118:15-23 (Reza Test.); Doc. No. 317 at 36:7-10 (Cole Test.).) The companies also testified that, while they choose certain components in a turnkey rig, the engine exhaust system is not one of them. (Doc. No. 317 at 38:19-39:6 (Cole Test.).) To imply that the companies make corporate governance decisions based on components that did not warrant individual attention is baseless.

Therefore, because the exclusion of the opinion of counsel letters, addressed to former defendants voluntarily dismissed from the case who are providing downstream indemnity, was erroneous and because the Defendants had reasonable, credible defenses to infringement, the Court should rule as a matter of law that any infringement was not willful.

**V.      Lost profits are unavailable to the Plaintiffs as a matter of law.**

The Plaintiffs argue that they are entitled to lost profits even though they do not compete with any of the Defendants and that they have not proven that, but for the Defendants' infringement, the Plaintiffs would have made the sales on the three rigs at issue in this case. Because of their failure of proof, the Plaintiffs are not entitled to lost profits as a matter of law.

Lost profits are only available as a remedy if the patent owner "establish[es] that but for the infringement, he would have made additional profits." *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1287 (Fed. Cir. 2011); *see also Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). Specifically, this means that the patentee must show that "the infringer actually caused the economic harm for

---

[5] The Plaintiffs surely understand how complicated corporate structures can be, given that the ownership interests of Mr. Davis and Mr. Leseman in L.C. Eldridge Sales run through "trusts and other means." (Doc. No. 313 at 139:22-24.)

which the patentee seeks compensation." *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996).  Lost profits are recoverable for infringement if the injury "was or should have been reasonably foreseeable by *an infringing competitor* in the relevant market." *Id.* (emphasis added) (quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1546 (Fed. Cir. 1995)).

      The Plaintiffs have decided not to sue not their competitors but instead to sue their customers.  As a result, no competitor of the Plaintiffs has been adjudicated to be an infringer of the asserted claims and lost profits are unavailable.  To support their argument that lost profits damages can stem from infringing use, the Plaintiffs cite *Minco.*  In that case, however, the court found that the parties were direct competitors and that they used the invention at issue "to compete in the market."  95 F.3d at 1118.  The Plaintiffs in no way compete with the Atwood and Seadrill defendants, rig operators that are downstream users of the accused exhaust systems years after Jurong purchased the systems from Azen.  It is a logical impossibility to characterize this years-later use as the "but for" cause of the Plaintiffs' lost sales years before.  The future can't cause the past.

      The Plaintiffs contend that they compete with Jurong, although Jurong manufactures and sells offshore oil rigs while the Plaintiffs are self-professed ventilation experts.  Jurong does not sell engine exhaust systems; it sells turnkey rigs.  The record in this case is clear that the purchases Jurong made from Azen happened either before the '828 Patent issued or—in every instance at issue—before Jurong had notice of the issuance of the patent.   It cannot have been foreseeable to Jurong that its purchases of exhaust systems from Azen would have resulted in a compensable injury to the Plaintiffs, who did not hold a patent at the time the sales were made.

Therefore, while the Defendants contend that there has been no infringement, the Court should, if it awards damages, reduce the award to a reasonable royalty of $2,250 per system, as discussed at greater length in the Defendants' motion (Doc. No. 326 at 30).

## CONCLUSION

For the foregoing reasons, and for those stated in their motion, the Defendants ask the Court to grant their motion for judgment as a matter of law.

DATED:   January 21, 2014               **GILLAM & SMITH, L.L.P.**


By:*/s/ Harry L. Gillam, Jr.*
    Harry L. "Gil" Gillam, Jr.
    Melissa Richards Smith
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450
(903) 934-9257 (facsimile)
gil@gillamsmithlaw.com
melissa@gillamsmithlaw.com

 **LINDQUIST & VENNUM LLP**
    David A. Allgeyer (*pro hac vice*)
    Christopher R. Sullivan (*pro hac vice*)
    Carrie Ryan Gallia (*pro hac vice*)
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2274
(612) 371-3211
(612) 371-3207 (facsimile)
dallgeyer@lindquist.com
csullivan@lindquist.com
cryangallia@lindquist.com

 **ATTORNEYS FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing has been electronically served upon all known counsel of record on this 21st day of January, 2014 via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                                */s/ Harry L. Gillam, Jr.*
                                                Harry L. Gillam, Jr.