**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| L.C. ELDRIDGE SALES CO., LTD.,<br>LESEMAN DAVIS LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>JURONG SHIPYARD PTE, LTD.,<br>ATWOOD DRILLING, INC.,<br>ATWOOD OCEANICS MANAGEMENT, LP,<br>ATWOOD OCEANICS GLOBAL LIMITED,<br>SEADRILL AMERICAS, INC.,<br>SEADRILL US GULF LLC,<br><br>    Defendants. | Civil Action No. 6:11-cv-599<br>(Jury Demanded)<br><br><br>**DEFENDANTS' SURREPLY IN<br>OPPOSITION TO PLAINTIFFS'<br>MOTION FOR PERMANENT<br>INJUNCTION OR ONGOING<br>ROYALTY** |

The Defendants hereby file this surreply in opposition to the Plaintiffs' Post-Trial Motion for Permanent Injunction or Ongoing Royalty (Dkt. 329).

## ARGUMENT

In further support of their motion for an injunction or an ongoing royalty, the Plaintiffs rely on speculation, inaccurate statements of fact and law, and inapposite caselaw.  Having been more than fully compensated by an award of lost profits on lost sales, the Plaintiffs cannot now insist they are entitled to additional damages in the form of an injunction.  The Plaintiffs' reply brief continues to blur the distinctions between the various current and former defendant entities and the oil rigs that would be subject to an injunction.  The Plaintiffs have failed to carry their burden on this motion and it should be denied outright.  As an alternative, the Defendants remain willing to enter into negotiations regarding an ongoing royalty directed specifically at future rigs using the Azen engine exhaust system that begin operating in the U.S. Gulf of Mexico after the judgment.

## A.     THE PLAINTIFFS ARE NOT ENTITLED TO A PERMANENT INJUNCTION

No point is more central to the Plaintiffs' argument than their false assertion that Eldridge and Jurong are competitors.  As a revision to their opening brief (Dkt. 342), the Plaintiffs have abandoned their assertion that the Eldridge and Azen engine exhaust systems compete in favor of the more tenuous contention that "there is no dispute the [sic] Jurong and Eldridge directly compete in supplying exhaust systems to at least Atwood and Seadrill."  Dkt. 342 at 1.  This statement is incorrect; Jurong does not supply exhaust systems.  As the Defendants have amply established, the engine exhaust system at issue was designed and manufactured by Azen, a supplier to Jurong.  And Eldridge does not operate a shipyard for the purpose of building oil rigs.  Instead, like Azen, it supplies exhaust and ventilation systems.  There is no evidence in the record that Atwood or Seadrill could buy only an engine exhaust system from Jurong.  The Plaintiffs rely on the contracts and specifications for the oil rigs, contracts that reference thousands of component parts, as evidence that Jurong "supplies" engine exhaust systems as part of its oil-rig manufacturing business.   But there is no evidence that Atwood or Seadrill could purchase a door, an engine, or drilling equipment from Jurong, because Jurong does not sell those component parts.  The Plaintiffs' continued assertions notwithstanding, it was Eldridge and Azen that competed in the engine exhaust marketplace; Jurong is a customer of these and other suppliers in the building of oil rigs.

### 1.     The Plaintiffs have been fully compensated for any injury.

As noted below, the Plaintiffs have now distinguished between the oil rigs currently operating in the U.S. Gulf of Mexico for which they are no longer seeking an ongoing royalty, and those future rigs that may, at some unspecified time in the future, begin operating in the Gulf.  Despite having been fully compensated, and, in fact, overcompensated, at trial by an

2

award of lost profits for the three rigs currently in the Gulf, however, the Plaintiffs continue to

seek an injunction on the use of the engine exhaust systems on those rigs.  Rather than address

the numerous and established precedents cited by the Defendants holding that, once fully

compensated, a plaintiff is not entitled to an injunction, the Plaintiffs insist that they have not

been fully compensated.  But as previously noted, the Plaintiffs have received the compensation

they sought for the Defendants' infringement, giving rise to an implied license that frees the

Defendants from the monopoly of the Plaintiffs' patent.  *See Odetics, Inc. v. Storage Tech.*

*Corp.*, 14 F. Supp. 2d 785, 788 (E.D. Va. 1998), *aff'd*, 185 F.3d 1259 (Fed. Cir. 1999) ("Thus, a

purchaser of an infringing device for which a damages award has been paid may use it to the

extent it could lawfully have done so had the infringing manufacturer originally been licensed to

make and sell the product in question.").  The jury instructions and verdict form demonstrate that

the Plaintiffs sought and received "profits from sales of its entire ENJET™ system which it

contends it would have sold along with the ENJET™ itself."  Dkt. 306 at 23; Dkt. 307. Thus, the

Plaintiffs' injury was fully compensated by the jury's verdict and an injunction is not available.[1]

Rather than acknowledge that the law bars an injunction under the circumstances, the

Plaintiffs insist that they have lost market share and goodwill that was not compensated by the

award of lost profits on the three rigs in the U.S. Gulf.  This is, in essence, an untenable assertion

by the Plaintiffs that they should have been awarded more damages than the law allows.  Even if

the law allowed further compensation based on these sales or use—which it does not—the

Plaintiffs cannot succeed because their assertions are mere speculation, unsupported by the

evidence at trial and insufficient to carry the Plaintiffs' burden for an injunction.  The Plaintiffs'

---

[1] The same will be true if the Court grants the Defendants' Renewed Motion for Judgment as a Matter of Law (Dkt. 326) and reduces the jury's award of lost profits to a reasonable royalty, which under the Patent Act serves as full compensation for infringement.

3

evidence of their lost market share consists entirely of the fact that Azen made a limited number of sales of engine exhaust systems to Jurong, most before the patent issued.  As the Federal Circuit has noted, lost sales are insufficient to establish irreparable harm because they "would require a finding of irreparable harm to every manufacturer/patentee, regardless of circumstances." *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) (quoting *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990)).  The record contains no evidence of sales before or after the patent issued for which U.S. patent law applies and for which the Plaintiffs did not receive full compensation.  Any harm beyond that is speculative and does not support an injunction against the use of the systems currently operating in the Gulf.

Next, the Plaintiffs speculate regarding a loss of potential goodwill in the marketplace. Again, there is no evidence in the record regarding the Plaintiffs' goodwill nor any effect the sale of the Azen systems had on that goodwill.  The Plaintiffs' argue that because the three rigs operating in the Gulf use the Azen system, their goodwill will be damaged.  But there is no evidence of any consumer confusion regarding the two systems, and no evidence that the existence of the Azen system in any way tarnishes the reputation of the Plaintiffs.  In fact, the testimony of Atwood's Bob Dawson, who is familiar with the operation of the Azen engine exhaust system, was that the Azen system is effective and that the rig operators have no complaints regarding their operations.  Dkt. 312 at 68-69.

The Plaintiffs' speculation regarding future harms reaches a pinnacle in their argument about the existing rigs that are outside of the U.S. Gulf of Mexico and therefore beyond the reach of U.S. patent laws.  The facts that the rigs exist outside of the U.S., that they are available for lease, or that the U.S. Gulf of Mexico is a hypothetical future location for drilling are not

4

sufficiently concrete to create imminent harm, let alone irreparable harm.  The Plaintiffs themselves established the full measure of their damages by seeking and receiving lost profits on lost sales.  Future harm, including the possibility that at some unidentified future time other rigs may come into the Gulf, is not a form of irreparable harm.  In support of their assertion that within the 30-year life of the rigs—in excess of the life of the patent—other rigs will come into the Gulf, the Plaintiffs cite only Mr. Leseman's testimony regarding the steel used in the manufacture of the various engine exhaust systems is designed to last 30 years.  Dkt. 342 at 6.  Of course, steel composition is not evidence that "at least some" of the extraterritorial rigs *will* come into the Gulf.  No other evidence is cited.  In fact, the statements of Atwood and Seadrill directly contradict this assertion.  Dkt. 338-1 (Declaration of Brett Cole at ¶ 3 ("Cole Decl.")); Dkt. 338-2 (Declaration of Walter Andrew Baker at ¶¶ 3, 4 ("Baker Decl.")).

The Plaintiffs insist that *ReedHycalog UK, Ltd. v. Diamond Innovations Inc.*, 6:08-CV-325, 2010 WL 3238312, at *12-13 (E.D. Tex. Aug. 12, 2010), should control here because the court found irreparable harm in a customer/seller relationship.  But in that case, the Court found that ReedHycalog licensed its technology to 95% of the drill bit industry and, therefore, "royalties from drill bit manufacturers allow ReedHycalog to both collect royalties from its direct competitors and collect higher royalties than from cutter manufacturers, [and] ReedHycalog would be irreparably harmed if an injunction is not entered."  *Id.* at *13.  Here, the Plaintiffs have no such licensing scheme that would interfere with the full compensation of lost profits on lost sales.  There are no licensors to protect, and because they do not license their products, the Plaintiffs' income does not rely on income from any licensors.

**2.      Lost profits on lost sales was a more-than-adequate remedy at law.**

Whether addressed as a separate factor as directed by the Supreme Court in *eBay*, or as combined with the irreparable injury factor as put forth by the Plaintiffs, the conclusion is the same:  Having received all of the money damages they sought at trial, the Plaintiffs cannot now claim that they did not have an adequate remedy at law.[2]  The full award of lost profits on lost sales of the three rigs subject to U.S. patent laws was a more than adequate remedy at law that bars the sort of double recovery sought by the Plaintiffs' request for an injunction against use. *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1549 (Fed. Cir. 1987) ("Having been awarded full compensation for the making and using of existing infringing thickeners, therefore, Amstar is not entitled to enjoin their use.").  This fact does not simply weigh against an injunction; it bars it.

**3.      The public interest is broader than the limited "health and safety" interest proposed by the Plaintiffs.**

The Plaintiffs next misstate the law of the *eBay* public-interest factor by injecting a "health and safety" requirement that is not present in the Supreme Court's formulation of the rule.  *See, eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (identifying the fourth factor as "that the public interest would not be disserved by a permanent injunction").  The Plaintiffs' inclusion of this restriction is a transparent effort to downplay the significant public interest in exploring for and drilling oil.  To the Plaintiffs, oil exploration and drilling is a mere "commercial activity, engaged in for profit, similar to the thousands of commercial activities that provide products people regularly use, from clothes, to cars, to computers."  Dkt. 342 at 8.  Of

---

[2] As noted, the same will be true if the damages are reduced pursuant to the Defendants' Renewed Motion for Judgment as a Matter of Law.  Once the Plaintiffs have received the full remedy allowed by law, even if that remedy is a reasonable royalty, no injunction is available to them.

6

course, the public interest is broader than the highly qualified version articulated by the Plaintiffs.

Here, as elsewhere in their briefs, the Plaintiffs' own arguments work against them.  As argued by the Plaintiffs, the public interest factor would not be considered for any patent unrelated to "health and safety."  In fact, in support of their argument, the Plaintiffs rely on *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010), *aff'd*, 131 S. Ct. 2238 (U.S. 2011), which involved the XML editor in Microsoft Word, a commercial computer product wholly unrelated to health and safety.  In *i4i*, the Federal Circuit was able to identify the *commercial* public interest affected by an injunction and weigh that against other commercial and practical effects.  *Id.*  As the Supreme Court did in *eBay*, the Federal Circuit conducted its analysis without applying the Plaintiffs' proposed "health and safety" limitation.

Furthermore, the Plaintiffs have back peddled on their own trial testimony regarding an "urgent" problem was purportedly solved by the ENJET™ .  Dkt. 313 at 27:15-17.  The Plaintiffs' expert Joseph Davis testified that the exhaust created by offshore oil rigs "has a lot of sulfur in it and the sulfur creates corrosion and other things, and so it's a very toxic, very—it causes people's eyes to water and breathing problems, those kinds of things."  *Id.* at 28:4-8.  The Plaintiffs' own operational brochure describes the ENJET™ as solving problems of "rig cleanliness and maintenance problems as well as rig personnel health issues." *Id.* at 42:15-43:5; Pl. Ex. 288.  The Plaintiffs' motion, however, contradicts their own assertions in the factual record that engine exhaust systems are vital to the health and safety of rig operations and personnel.  Thus, operating the oil rigs without the use of the existing engine exhaust system—as the Plaintiffs seek through this injunction—would be against the very public interest the Plaintiffs tout.

Beyond misstating the law as it relates to this factor, the Plaintiffs make no response to the Defendants' evidence that turning off the engines (as would be required to remove the Azen systems) of the three rigs in the U.S. Gulf of Mexico, even for a short time, would have a significant disruption in the rigs' oil exploration and drilling operations.  The broader American public's interest in continuing the operation of the rigs far outweighs the Plaintiffs' assertion of a "health and safety" interest in engine exhaust systems, which the Plaintiffs admit are not a requirement for the operation of the rigs at issue.

### 4.      The balance of hardships favors the Defendants.

The Plaintiffs do not raise any new arguments regarding the balance of hardships between the Parties.  Nor do they refute the caselaw that holds that absent direct competition in the market, the Plaintiffs' size or reliance on their patent does not support a finding of hardship weighing in favor of an injunction.  *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1341 (Fed. Cir. 2012).  The hardship incurred by Atwood and Seadrill from an injunction against the use of the Azen engine exhaust systems by Atwood or Seadrill—after the Plaintiffs have been more than adequately compensated through an award of lost profits—is disproportionate to any hardship incurred by the Plaintiffs.  Dkt. 338-1 (Cole Decl. at ¶ 4-7); Dkt. 338-2 (Baker Decl. at ¶ 5-8).  It is the disproportionate effect of an injunction against use— not the mere existence of hardship—that tips the balance of hardships in favor of the Defendants.

## B.      THE PLAINTIFFS ARE NOT ENTITLED TO AN ONGOING ROYALTY

Recognizing that they have already been awarded damages for the oil rigs currently operating in the U.S. Gulf of Mexico, the Plaintiffs have revised their position to focus on new rigs operating the Azen engine exhaust system that come into the U.S. Gulf of Mexico.  Dkt. 342 at 9.  The Plaintiffs' insistence that the *Bard Royalty Order* should control is based on the

specific facts of that order, facts that are distinguishable.  Specifically, the *Bard* court did award lost profits for a certain class of products at issue.  *Bard Royalty Order* at 12.  But these products were not the starting point of either the parties' negotiations or the court's award of an ongoing royalty, which was based on the royalty award for a different class of products.  *Id.*  The *Bard Royalty Order* is an otherwise unremarkable application of the established precedent in *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007).  Moreover, the Plaintiffs are not seeking an increased royalty; they are seeking three times their lost profits, for which they are not entitled because no competitor remains in the case.

In this case, having been awarded lost profits, there is no basis for an ongoing royalty determination.   The Plaintiffs repeat the fallacious assertion that Jurong and Eldridge compete in the engine exhaust market.  The Plaintiffs then further assert that, as in the *Bard Royalty Order*, which presented numerical profit margins, the engine exhaust system is "lucrative."  The term "lucrative" lacks the specificity of the profit margins found in the *Bard Royalty Order*, and no other evidence supports any findings of *actual* profits or profit margins.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully ask the Court to deny the Plaintiffs' motion for permanent injunction or ongoing royalty.

DOCS-#4023297-V6

DATED:  February 13, 2014              **GILLAM & SMITH, L.L.P.**


By: Harry L. Gillam, Jr.
    Harry L. Gillam, Jr.
    Melissa Richards Smith
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450
(903) 934-9257 (facsimile)
gil@gillamsmithlaw.com
melissa@gillamsmithlaw.com

**LINDQUIST & VENNUM LLP**
    David A. Allgeyer (*pro hac vice*)
    Christopher R. Sullivan (*pro hac vice*)
    Carrie Ryan Gallia (*pro hac vice*)
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2274
(612) 371-3211
(612) 371-3207 (facsimile)
dallgeyer@lindquist.com
csullivan@lindquist.com
cryangallia@lindquist.com

**ATTORNEYS FOR DEFENDANTS**


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing has been electronically served upon all known counsel of record on this 13th day of February, 2014 via the Court's CM/ECF system per Local Rule CV-5(a)(3).


*/s/ Harry L. Gillam, Jr.*
Harry L. Gillam, Jr.

DOCS-#4023297-V6